MILWAUKEE DEPUTY SHERIFFS' ASSOCIATION, Respondent,
v. MILWAUKEE COUNTY, Appellant.

*No. 479.  Argued September 3, 1974.—Decided October 1, 1974.*
(Also reported in 221 N. W. 2d 673.)

For the appellant there was a brief by *Robert P. Russell,* corporation counsel, and *Patrick J. Foster,* assistant corporation counsel, and oral argument by *Mr. Foster.*

For the respondent there was a brief by *Franklyn M. Gimbel,* and *Gimbel, Gimbel & Reilly,* all of Milwaukee, and oral argument by *Franklyn M. Gimbel.*

HEFFERNAN, J. This appeal concerns the resolution of a collective bargaining dispute between the Milwaukee Deputy Sheriffs' Association, a labor organization of law

county. The resolution of such disputes is controlled by sec. 111.77, Stats., and administrative rules of the Wisconsin Employment Relations Commission (Wisconsin Administrative Code ERB 30). The precise question posed on this appeal is whether, after a petition for final and binding arbitration is filed pursuant to sec. 111.77 (4) (b), one of the parties may amend its "final offer" to include a contract period which was not the subject of collective bargaining negotiations prior to petitioning for final and binding arbitration.

We conclude that neither the statutes nor public policy permits such amendment and that the amendments contemplated by the statutes refer to matters and to contract periods which had previously been the subject of collective bargaining negotiations. The order of the trial court must be affirmed.

This case was submitted to the circuit court for Milwaukee county on stipulated facts. The deputy sheriffs employed by Milwaukee county are represented by an association which is recognized by the Wisconsin Employment Relations Commission as a labor organization authorized to bargain collectively on behalf of the deputy sheriffs in the collective bargaining unit. The county is authorized to engage in collective bargaining with the Deputy Sheriffs' Association. The duties of each are set forth in sec. 111.77, Stats., which specifically relates to the "settlement of disputes in collective bargaining units composed of law enforcement personnel and firefighters."

The association and the county, during the year 1972, entered into collective bargaining for the purpose of reaching an agreement in respect to wages, hours, and conditions of employment for the year 1973. On December 4, 1972, after a period of negotiations in which each party had submitted proposals for a 1973 contract, the association filed a petition with the Wisconsin Employment Relations Commission, which alleged that the asso-

ciation and the county had reached an impasse in their collective bargaining negotiations. It asked the WERC "to initiate final and binding arbitration between said petitioner and Milwaukee County," under the authority of the statutes. Pursuant to this petition, the WERC appointed a hearing officer to meet with the parties for the purpose of determining "if an impasse has been reached."

The parties met with the hearing officer on December 28, 1972, and on January 8, 1973. On December 29, 1972, the association filed revised proposals modifying its original offer in some respects. On January 15, 1973, the county modified its previous offer by increasing the wage proposal and by including a wage proposal for the year 1974. The county specified that this offer was predicated upon a two-year contract including both 1973 and 1974. The stipulated facts indicate that at no time prior thereto had there been any offers or negotiations in respect to the year 1974.

On January 23, 1973, the WERC issued an order in which it concluded that an impasse between the parties existed, and final and binding arbitration was ordered. It was at this point that the WERC directed that the parties file with the WERC their "final offers" as of January 15, 1973.

Arbitration proceedings were commenced on March 28, 1973. At that time counsel for the employees objected to the county's two-year proposal because:

"The concept of bargaining for a two-year contract never arose during the traditional and normal collective bargaining activities that were called for in the 1972 contract."

The association's counsel argued that the county's offer came only after the association filed its petition for final and binding arbitration and, therefore, ought not to be

considered. Despite this objection, the parties nevertheless proceeded to arbitration.

On May 8, 1973, the arbitrators, ostensibly pursuant to sec. 111.77 (4) (b), Stats., selected "the final offer of one of the parties." The arbitrators selected the offer of the county providing for an agreement for both 1973 and 1974.

Because the association considered it beyond the jurisdiction of the arbitrators to select an offer made after the time the petition for arbitration was filed, it submitted a motion to the WERC to strike from the arbitrators' award that portion of the award that related to the contract period for 1974. The WERC dismissed the association's motion on the ground that under ch. 298, Stats., jurisdiction to vacate or to modify an arbitrator's award was vested in the courts and not in the WERC. Accordingly, on August 2, 1973, the association filed a motion with the circuit court for Milwaukee county to vacate that portion of the award that related to the 1974 employment contract. On December 31, 1973, the circuit court ordered the entry of an award, as requested by the association. The portion of the award relating to 1974 was vacated. The remainder of the award was affirmed, and the parties were directed to enter into negotiations in respect to an agreement for 1974.

Appeal has been taken by the county only from the portion of the award relating to 1974 and the portion of the award that directed further collective bargaining for that year.

The trial judge properly concluded that, under the statutes, arbitrators cannot consider issues raised for the first time after negotiations have closed and the arbitration proceeding begun.

The preamble to sec. 111.77, Stats., imposes upon each party the duty to bargain collectively in good faith. The elements of good faith are set forth in sub. 1 (a), (b), (c), and (d). Where, as in this case, a prior contract is

in effect, a party shall not modify the contract unless there is proper service of notice of proposed contract modification, offers to meet and confer for the purpose of negotiation, and notice to the WERC for participation in mediation sessions if requested to do so by the WERC. Either party may initiate compulsory and final arbitration if no other procedures are available and if an impasse in the dispute has been reached. Because the parties are considered by the legislature to be involved in essential municipal services, the parties are prohibited from resorting to strikes or lockouts. The alternative to such forms of showdown in labor disputes is compulsory arbitration, so that the dispute may be resolved without interruption of necessary functions of government. The entire structure of the statute demonstrates that good-faith negotiations are a prerequisite to the initiation of binding arbitration. The purpose of arbitration on a final offer is to induce the parties to bargain in good faith to reach an agreement or at least to narrow the differences between the parties to the greatest extent possible.

The purpose of final offer arbitration is set forth by Arvid Anderson in *The Impact of Public Sector Bargaining,* 1973 Wisconsin Law Rev. 986, 1012:

"The purported rationale . . . is that final offer selection will induce bargaining since the parties will not make exorbitant demands for fear that the other party's more reasonable position will be adopted as the arbitrator's award."

The trial judge correctly concluded that permitting arbitrators to consider issues raised in an offer for the first time after negotiations have closed would frustrate the legislative intent to provide meaningful and productive negotiations prior to arbitration.

Other studies support the position that the public purpose of compulsory arbitration can only be attained after

a narrowing of differences of opinion in respect to the matters submitted to arbitration. *See,* Howlett, *Contract Negotiation Arbitration in the Public Sector,* 42 Univ. of Cincinnati Law Rev. (1973), 47, 72. Long and Feuille in *Final-Offer Arbitration: "Sudden Death" in Eugene,* 27 Industrial & Labor Relations Review (1974), 186, 190, discuss the theory of final-offer arbitration and its practical effects in Eugene, Oregon. They accept the theory that final-offer bargaining will induce the parties to develop the most reasonable position prior to an arbitrator's decision. They state:

"The overriding purpose of the final-offer procedure . . . is to induce the parties to make their own compromises by posing potentially severe costs if they do not agree. In other words, a successful final-offer procedure is one that is not used; one that induces direct agreement during the proceedings; or, using a less rigorous definition of success, one that substantially narrows the area of disagreement. And when the procedure is used, the function of the arbitrator is to operationalize its potential costs by deciding against the party that advocated the less reasonable offer(s). In other words, the final-offer mechanism is intended to promote the give-and-take of good-faith bargaining by acting as a 'strikelike' substitute rather than to serve as a mechanism by which arbitrators may exercise their discretion." (P. 202)

The authors conclude that final-offer arbitration in Eugene, Oregon, resulted in better use of collective bargaining opportunities prior to arbitration. It seems clear that the "sudden death" result of compulsory arbitration should never result in the making of an award when the offer made in arbitration was not the subject of bargaining prior thereto.

Under sec. 111.77, Stats., the petition for compulsory arbitration may be filed only after one of the parties concludes that an impasse has been reached. The form dated December 1, 1972, which the association used to petition for compulsory arbitration—a form apparently

sanctioned by the procedures of the WERC—recites: ". . . the Petitioner and the other party named above have reached an impasse in their collective bargaining . . . ." Any argument of the county that an impasse was reached only on January 15, 1973, after the offer of the county to extend the contract period to 1974 flies directly into the teeth of the statute and the commission's approved form. If unlimited counter-offers were permitted after the filing of the petition, the date of impasse could never be ascertained. The statute requires, as a jurisdictional prerequisite to compulsory arbitration, that the commission find that the impasse existed at or before the filing of the petition. The impasse can be broken before the matter finally goes to arbitration only if one party or the other accepts a final offer. The final offer, although it can be amended and submitted to final arbitration, must, if amended, be germane to the matters subject to negotiations in the prior bargaining sessions. We conclude that the interjection of a new contract time period in an amended final offer after the petition is filed presents a question not germane to the previous negotiations and is beyond the statutory jurisdiction of the arbitrators.

Sec. 298.10, Stats., which is specifically applicable to the provisions of sec. 111.77, provides:

"(1) . . . the court in and for the county wherein the award was made must make an order vacating the award upon the application . . .

". . .

"(d) Where the arbitrators exceeded their powers . . . ."

Under the circumstances revealed by the record in this case, the award made was beyond the power conferred by statute upon the arbitrators. The trial judge correctly set aside that portion of the award that exceeded the jurisdiction of the arbitrators.

While a convincing argument could be made that the trial court should have vacated the entire award, the county has raised no objection to the portion of the award relating to 1973 and the association has specifically in its brief waived any objection. The award in respect to 1973 was jurisdictionally appropriate, and, in the absence of an attack upon it, must stand.

We conclude also that the objection to the 1974 portion of the award was not waived and, in any event, that portion of the award was beyond the power of the arbitrators under the form of arbitration selected by the parties.

*By the Court.*—Order affirmed.